UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARK MILLER,<br><br>                Petitioner,<br><br>     v.<br><br>DAN PACHOLKE,<br><br>                Respondent. | Case No.  C08-5138BHS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **July 11, 2008** |

Petitioner is a state prisoner currently incarcerated at the Stafford Creek Correction Center, serving a 54 month sentence for Second Degree Incest.  Petitioner seeks habeas relief under 28 U.S.C. § 2254.  Respondent has answered the petition, and petitioner has filed pleadings in opposition to the answer.  After a careful review of the record, the undersigned concludes and recommends that the petition should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's convictions are based on the following facts, as summarized by the Washington Court of Appeals:

> Mark R. Miller and M.M. are adult brother and sister, respectively; they grew up in Oregon. When Miller was about 18 years old (Court's footnote: Miller was around 18 years old at the time of the incident. He was 19 when convicted in 1989) and M.M. was a year or two younger, Miller fondled M.M. Miller was charged with incest, pleaded guilty to a reduced charge of sexual misconduct, and was sentenced in 1989 in Oregon.
>
> In late October 2004, Miller was living in Washington with his brother, Mike Miller (Mike). (Court's footnote: We use Mike's first name for clarity. We intend no disrespect.) When M.M. visited Mike's home and learned that Miller had to move, she

offered him temporary lodging at her home. Miller then moved in with M.M.

On January 22, 2005, Miller was lying on M.M.'s bed talking with her about family issues throughout the evening until early the following morning. M.M. sat next to Miller most of the evening and eventually laid down next to him when she got tired. When Miller curled up next to M.M., placing his head on her shoulder, she told him, "get off me[;] I'm not your pillow." Report of Proceedings (RP) Vol. 5 at 55.

Instead of moving away, Miller placed his leg over M.M.'s. M.M. again told him to "get off." Over M.M.'s objection, Miller grabbed her breasts and her "private part" between her legs. M.M. felt "scared to death" but she did not leave the room. She fell asleep for the next few hours.

The next day, she told Mike about the incident with Miller, prompting Mike to contact the police.

Exhibit 6 (filed along with Respondent's Answer) Unpublished Opinion, State v. Miller, Washington Court of Appeals Cause No. 33480-1-II.

On January 28, 2005, appeared at his arraignment, represented by an attorney, and entered a plea of not guilty. A jury trial was completed on March 22, 2005, and Mr. Miller was found guilty of the crime of Incest in the Second Degree as charged. Petitioner was sentenced He was sentenced to 54 months, within a standard range, on June 2, 2005.

Following his conviction and sentence, Mr. Miller filed a direct appeal and a subsequent collateral attack by way of a Personal Restraint Petition. A certificate of finality was issued by the Washington Court of Appeals on February 21, 2008.

The instant matter, Mr. Miller's federal petition for writ of habeas corpus, was filed on March 6, 2008. He presents one issue for review:

A. Petitioner's Fifth (V), Sixth (VI), and Fourteenth (XIV) Amendment Rights Secured by the U.S. Constitution were Violated by the Denial of Effective Assistance of Counsel.

Petition (Doc. 5) at 2.

Petitioner argues the following:

In the matter before this Court, petitioners [sic] defense counsel failed to contact the witnesses which would have been able to cast serious doubts as to this alleged event. According to one of the proffered witnesses, the alleged victim has a history of fabricating the same allegations that petitioner was charged with, and has previously had instituted criminal proceedings against innocent individuals. See Exhibit 1. Given that this witness is also THE SISTER of the alleged victim, her testimony at trial would have been more than adequate to have informed the jury of the alleged victim's propensity to fabricate these non-existent happenings. As she is also the alleged victims [sic] SISTER, her testimony would have been given weight by the jury, as who knows a person more thoroughly than their family members; people who grew up together? Yet, petitioner was not able to offer the jury the benefit of this witness because defense counsel completely

REPORT AND RECOMMENDATION
Page - 2

    failed to contact or interview the said witness. By failing to investigate and enter into the record evidence of petitioner's actual innocence, or a serious doubt as to the question of innocence, defense counsel's performance was deficient. Hart, supra at 170. This issue is compounded as to another proffered witness, the ALLEGED VICTIM's MOTHER. See Exhibit 2. Coupled with the fact that there were previous charges of alleged sexual misconduct which were brought but ultimately dropped, initiated on the alleged victims fabricated stories, there is a substantial likelihood that had these witnesses been located and interviewed by defense counsel, and called to testify at this trial, the outcome would have been different. Strickland, supra at 668.

    [Omitted]

    Further, defense counsel failed to present any expert testimony as to the alleged victim's version of the events and the underlying psychological imbalances which would have caused said alleged victim to continuously and repeatedly institute false accusations as a means of retaliation or retribution. Absent such testimony, the jurors were incapable of understanding the intricacies of the alleged victim's fragile psyche. This alone renders defense counsel's assistance ineffective. Shumate, supra at 1078-82.

Petition (Doc. 5) at 7-8.

After carefully reviewing the record, the undersigned is unpersuaded by Petitioner's arguments. The undersigned recommends denial of the petition for writ of habeas corpus.

## EVIDENTIARY HEARING NOT REQUIRED

In its Order Directing Service and Response, the court directed respondent to state in his response whether or not an evidentiary hearing was necessary. Accordingly, respondent has informed the court that an evidentiary hearing is not required. The function of an evidentiary hearing is to try issues of fact, such a hearing is unnecessary when only issues of law are raised. *See e.g.* Yeaman v. United States, 326 F.2d 293 (9th Cir. 1963). An evidentiary hearing is appropriate only when petitioner shows:

    (A) the claim relies on –

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

After careful review of the record, the undersigned concludes there are no relevant factual disputes to resolve in order for the Court to render its decision in this case, and petitioner has not shown circumstances that satisfy the above standard of law. Accordingly, an evidentiary hearing was not

REPORT AND RECOMMENDATION
Page - 3

conducted.

## DISCUSSION

*A. STANDARD OF REVIEW*

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 which significantly affected 28 U.S.C. §§ 2244, 2253, 2254 and 2255.  Section 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Old § 2254(d), dealing with the presumption of correctness is now embodied in 2254(e), which states,

> In a proceeding instituted by an application for a writ of habeas corpus by person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

*B. EFFECTIVE ASSISTANCE OF TRIAL COUNSEL*

The Sixth Amendment guarantees an effective advocate for each criminal defendant.  Wheat v. United States, 486 U.S. 153, 159 (1988)  The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.  "[A] defendant may not insist on representation by an attorney he cannot afford."  Id.

The specific test to be applied in determining whether petitioner received ineffective assistance of counsel is twofold:  petitioner must demonstrate both that counsel's performance was, considering all the circumstances, unreasonable under prevailing professional norms, and that he was prejudiced thereby.  Strickland v. Washington, 466 U.S. 668, 687-91 (1984).   Both parts need be established; failure to make

REPORT AND RECOMMENDATION
Page - 4

1  the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness
2  claim. Strickland, 466 U.S. at 700.  Considering the first prong, petitioner must rebut "a strong
3  presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and
4  that counsel's performance was "sound trial strategy." Id. at 689.  The Court must attempt to "eliminate
5  the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to
6  evaluate the conduct from counsel's perspective at the time." Id.   To meet the second Strickland
7  requirement of prejudice, "defendant must show that there is a reasonable probability that, but for
8  counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable
9  probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Washington courts reasonably determined that Mr. Miller's trial was not jeopardized by ineffective assistance of counsel.  The State Supreme Court wrote:

> Mr. Miller fails to show prejudicial ineffectiveness in relation to these witnesses in any event.  Ms. Shinners would relate incidents from Oregon in 1991 in which the victim allegedly falsely accused two other men of rape.  But Ms. Shinners' knowledge of one incident is based on inadmissible hearsay.  And though in the other incident the victim (while highly intoxicated) purportedly told Ms. Shinners that the rape allegation was false, Ms. Shinners has no first-hand knowledge of her claim that the prosecutor dropped the rape charge. The rest of Ms. Shinners' affidavit expresses inadmissible opinions about the victim's "vindictive tendencies"and "victim. mentality."  Ms. Ormesher's affidavit consists almost entirely of similar inadmissible opinions.  And Ms. Ormersher acknowledges that she spoke with defense counsel and told him that the victim could be a credible witness.  She now claims she has changed her mind and would have liked to have testified.  But she does not say she contacted counsel or that counsel otherwise had reason to believe her opinion had changed.  In sum, Mr. Miller does not show that defense counsel was professionally deficient with respect to these witnesses or that, had the witnesses testified, they would have provided admissible evidence that would have changed the result. *See* State v. McFarland, 127 Wn.2d 332, 334-25, 899 P.2d 1241 (1995) (standard for ineffective assistance claim).

Exhibit 13 at 2 (filed along with Respondent's Answer).

Review of the Affidavits of Sarah Shinners and Allana Ormesher (Petitioner's Sister and Mother, respectively) reveals inadmissible hearsay and opinion testimony and, at best, the evidence would have only equivocally challenged the victim's credibility rather than affirmatively establish Petitioner's innocence.  Applying the Strickland standard, the state court reasonably concluded that counsel's decision not to call the witnesses was neither professionally deficient nor prejudicial.  Moreover, Ms. Ormersher's affidavit reflects she initially indicated the victim could be credible. Counsel made a sound tactical decision in deciding not to call Ms. Ormersher in light of her equivocations as to the victim's

1 credibility and the potential that she could be a poor defense witness or a good state witness.  Moreover,
2 Mr. Miller has not demonstrated any prejudicial effect from counsel not calling his proposed witnesses.
3 As stated above, neither witness would have presented admissible testimony. Moreover, it is not clear that
4 Ms. Ormesher would have even provided testimony beneficial to the defense. Assuming that the court
5 admitted the testimony of Ms. Ormesher and Ms. Shinners, at best they would have challenged the
6 credibility of the victim, and would not have provided  affirmative evidence of innocence such as an alibi.
7 Thus, Miller fails to establish that counsel's alleged deficient performance prejudiced the outcome of the
8 trial.

In conclusion, the court finds no constitutional error; the state court decision is not contrary to or an unreasonable application of clearly established federal law.

## CONCLUSION

Based on the foregoing discussion, the Court should dismiss the petition for writ of habeas corpus. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **July 11, 2008**, as noted in the caption.

DATED this 11th day of June, 2008.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 6